# Exhibit A

# Civil Justice Initiative

## The Landscape of Civil Litigation in State Courts



Williamsburg, Virginia



# Executive Summary

Much of the debate concerning the American justice system focuses on procedural issues that add complexity to civil litigation, resulting in additional cost and delay and undermining access to justice. Many commentators are alarmed by the increasing privatization of the civil justice system and particularly by the dramatic decline in the rates of civil bench and jury trials. In addition, substantially reduced budgetary resources since the economic recession of 2008-2009 have exacerbated problems in civil case processing in many state courts.

In response to these concerns, state and federal courts have implemented a variety of civil justice reform projects over the past decade. Some have focused on particular types or characteristics of civil cases such as business and complex litigation programs. Others have aimed at problematic stages of civil litigation, especially discovery. In 2013, the Conference of Chief Justices (CCJ) convened a Civil Justice Improvements Committee to assess the effectiveness of these efforts and to make recommendations concerning best practices for state courts. To inform the Committee's deliberations, the National Center for State Courts (NCSC) undertook a study entitled *The Landscape of Civil Litigation in State Courts* to document case characteristics and outcomes in civil cases disposed in state courts.

Differences among states concerning data definitions, data collection priorities, and organizational structures make it extremely difficult to provide national estimates of civil caseloads with sufficient granularity to answer the most pressing questions of state court

> Many commentators are alarmed by the increasing privatization of the civil justice system and particularly by the dramatic decline in the rates of civil bench and jury trials.

policymakers. The sample of courts in the *Landscape* study was intentionally selected to mirror the variety of organizational structures in state courts. The resulting *Landscape* dataset consisted of all non-domestic civil cases disposed between July 1, 2012 and June 30, 2013 in 152 courts with civil jurisdiction in 10 urban counties. The 925,344 cases comprise approximately five percent (5%) of state civil caseloads nationally.

## FINDINGS

The picture of civil caseloads that emerges from the *Landscape* study is very different than one might imagine from listening to current criticism about the American civil justice system. High-value tort and commercial contract disputes are the predominant focus of contemporary debates, but collectively they comprised only a small proportion of the *Landscape* caseload. In contrast, nearly two-thirds (64%) were contract cases, and more than half of those were debt collection (37%) and landlord/tenant cases (29%). An additional sixteen percent (16%) were small claims cases involving disputes valued at $12,000 or less,

and nine percent (9%) were characterized as "other civil" cases involving agency appeals and domestic or criminal-related cases. Only seven percent (7%) were tort cases and one percent (1%) were real property cases.

To the extent that damage awards recorded in the final judgment are a reliable measure of the monetary value of civil cases, the cases in the dataset involved relatively modest sums. Despite widespread perceptions that civil litigation involves high-value commercial and tort cases, only 357 cases (0.2%) had judgments that exceeded $500,000 and only 165 cases (less than 0.1%) had judgments that exceeded $1 million. Instead, three-quarters (75%) of all judgments were less than $5,200. These values varied somewhat based on case type; three-quarters of real property judgments, for example, were less than $106,000 and three-quarters of torts were less than $12,200. For most represented litigants, the costs of litigating a case through trial would greatly exceed the monetary value of the case. In some instances, the costs of even initiating the lawsuit or making an appearance as a defendant would exceed the value of the case.

Litigation costs that routinely exceed the case value explain the low rate of dispositions involving any form of formal adjudication. Only four percent (4%) of cases were disposed by bench or jury trial, summary judgment, or binding arbitration. The overwhelming majority (97%) of these were bench trials, almost half of which (46%) took place in small claims or other civil cases. Three-quarters of judgments entered in contract cases following a bench trial were less than half of those in small claims cases ($1,785 versus $3,900). This contradicts assertions that most bench trials involve adjudication over complex, high-stakes cases.

Most cases were disposed through an administrative process. A judgment was entered in nearly half (46%) of the cases, most of which were likely default judgments. One-third of cases were dismissed, possibly following a settlement; ten percent (10%) were explicitly recorded as settlements.

Summary judgment is a much less favored disposition in state courts compared to federal courts. Only one percent (1%) were disposed by summary judgment, and most of these would have been default judgments in debt collection cases except the plaintiff pursued summary judgment to minimize the risk of post-disposition challenges.

A traditional hallmark of civil litigation is the presence of competent attorneys zealously representing both parties. One of the most striking findings in the dataset was the relatively large proportion of cases (76%) in which at least one party was self-represented, usually the defendant. Tort cases were the only ones in which a majority (64%) of cases had both parties represented by attorneys. Small claims dockets had an

> At least one party was self-represented (usually the defendant) in more than three-quarters of the cases.